UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 22-22660-CIV-SINGHAL

ZAUSNER FOODS CORP.,

      Plaintiff,

v.

CLAUDE BLANDIN, BRUNO BLANDIN,
PATRICK BLANDIN, ARNO LEONI, individuals
and JOHN DOE DEFENDANTS 1-10,

      Defendants.

_____/

## ORDER ON DEFENDANTS' MOTION TO DISMISS

**THIS CAUSE** is before the Court on Defendants' Motion to Dismiss for Lack of

Personal Jurisdiction, Lack of Subject Matter Jurisdiction, and for Failure to State a Claim

and Motion to Strike ("Defs.' Mot.") (DE [6]), filed on September 9, 2022, and Defendants'

Motion to Take Judicial Notice (DE [5]). Plaintiff filed its Response in Opposition to

Defendants' Motions ("Pl.'s Opp.") (DE [19]) on October 10, 2022. Defendants then filed

a Reply in support of their Motion ("Defs.' Reply") (DE [20]) on October 24, 2022. With

leave of this Court, Plaintiff filed Supplemental Briefing ("Pl.'s Supp. Br.") (DE [34]) on

February 17, 2023, and Defendants filed a surreply ("Defs.' Surreply") (DE [38]) on

February 24, 2023. A motion hearing was held on May 9, 2023. The Motions are ripe for

this Court's consideration.

## I.    BACKGROUND FACTS

Plaintiff, Zausner Foods Corp. ("Plaintiff" or "Zausner"), a Pennsylvania-based food

company, brings this action as successor-in-interest to its former subsidiary, ZNHC.

(Compl. (DE [1-2] at ¶ 2)).  Pursuant to a December 6, 2014, Stock Purchase Agreement ("SPA"), ZNHC sold its cheese distribution business, Schratter Foods, Incorporated ("SFI") to two companies—ECB USA, Inc. ("ECB USA") and Atlantic Ventures Corp. ("Atlantic Ventures")—both purportedly owned and controlled by the individual Defendants, the Blandin family.  *Id.* at ¶¶ 5, 8.  Under the SPA, ECB USA and Atlantic Ventures agreed to pay ZNHC a total of $27 million for SFI.  *Id.* at ¶ 68.  This included: (1) $2 million due at closing in December 2014; (2) $15 million due at a second closing in June 2015; and (3) four annual installments of $2.5 million each (the "Deferred Installment Payments").  *See id.*  Pursuant to the SPA, the parties agreed to pledge 90% of the stock in SFI to ZNHC to secure the Deferred Installment Payments.  *Id.* at ¶ 70.  On June 16, 2015, the parties to the SPA entered into an amendment to reduce the outstanding $10 million in payments due to ZNHC to $6.1 million.  *Id.* at ¶¶ 80–82.  Plaintiff is not a party to the original SPA but is a signatory to the amendment.  *See id.* at ¶ 66; Ex. D, ¶ 8.  The remaining three installments were due annually beginning on December 31, 2016.  *See id.*  Defendants allegedly requested extensions of the payment deadlines; all of which expired with no additional payments made.  *Id.* at ¶¶ 83–86.

In or around February 2018, Defendants, Claude Blandin, Bruno Blandin, Patrick Blandin, Arno Leoni, and John Doe Defendants 1-10, allegedly caused ECB USA and Atlantic Ventures to sell SFI's assets to Atalanta Corporation ("Atalanta") for at least $12 million.  Plaintiff alleges that, instead of using deal proceeds to pay the Deferred Installment Payments, Defendants caused SFI to be liquidated and drove SFI to enter into an Assignment for the Benefit of Creditors ("ABC") Proceeding.

II.     **PROCEDURAL HISTORY**

Plaintiff is seeking an equitable accounting of the proceeds from the asset sale to Atalanta (Count I), alleging tortious interference with the SPA agreement (Count II) and alleging conspiracy to tortiously interfere (Count III) against Defendants.   The instant litigation is only one of many pending actions between the parties.   In a separate proceeding in this Court, *ECB USA, Inc. v. Savencia Cheese USA, LLC, et al,* No. 20-cv-21681-SINGHAL (S.D. Fla.), Defendants' companies, ECB USA and Atlantic Ventures, have sued Zausner, its officers and directors, and its parent company Savencia, S.A. for fraud in the inducement, among other claims.  Zausner also filed a complaint against ECB USA, Inc., Atlantic Ventures, and the individual defendants, among others, in the United States District Court for the District of Delaware.  *Zausner Foods Corp. v. ECB USA, Inc. et al.*, No. 1:20-cv-01769-RGA (D. Del).   The Delaware District Court consolidated Zausner's action with a pending case by ECB, USA, Inc. against Zausner's parent company, Savencia.  *See  ECB USA, Inc., et al. v. Savencia S.A., et al.*, No. 19-cv-00731-RGA-CJB (D. Del.).  The Delaware District Court dismissed the individual defendants on March 25, 2022, after determining that it lacked personal jurisdiction over Defendants pursuant to Defendants' sworn declarations contesting jurisdiction.  *See id.* (DE [222]). On April 28, 2022, Plaintiff commenced the instant action by filing its three-count Complaint in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida.  *See* (DE [1]).  Defendants removed the action to this Court on August 22, 2022.  *See id.*

Defendants ask this Court to take judicial notice of the pending ABC Proceeding and the Delaware consolidated action (*ECB USA, Inc., et al.*, No. 19-cv-00731-RGA-

CJB).  *See* (DE [5]).  Defendants also urge dismissal of Plaintiff's Complaint on five grounds:  (1) the core substantive and jurisdictional allegations are based on "information and belief;" (2) all claims are barred by the statute of limitations, which ran on April 25, 2022; (3) Plaintiff lacks standing to file claims because it enjoys no rights under the December 6, 2014 SPA; (4) the Court lacks personal jurisdiction over the Defendants; and (5) the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). *See* (Defs.' Mot. (DE [6])).  Finally, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, Defendants move to strike allegations relating to the sale of nonparty SFI's assets as irrelevant and immaterial.  *See id.* at 2.  For the reasons set forth below, Defendants' Motion to Dismiss (DE [6]) and Motion to Strike (DE [5]) are denied.

III.    **LEGAL STANDARDS**

      A.  **Lack of Personal Jurisdiction**

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction.  "A federal district court sitting in diversity may exercise personal jurisdiction to the extent allowed by the law of the forum state and the Constitution's Due Process Clause." *Am. Univ. of the Caribbean v. Caritas Healthcare*, 484 Fed. Appx. 322, 326 (11th Cir. 2012) (citing *Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002)).  "A plaintiff seeking the exercise of personal jurisdiction over a nonresident defendant bears the initial burden of alleging in the complaint sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009) (citations omitted).  If a plaintiff pleads sufficient material facts to support the exercise of personal jurisdiction, defendants may "challenge[] jurisdiction by submitting affidavit evidence in support of its position," after which "the

burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *Meier*, 288 F.3d at 1269).

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute, and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *United Techs. Corp.*, 556 F.3d at 1274 (11th Cir. 2009) (citations omitted); *see also Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). As the extent of the long-arm statute is governed by Florida law, this Court must construe it as would the Florida Supreme Court. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1991). In *International Shoe Co. v. Washington*, the U.S. Supreme Court "held that in order to subject a defendant to an in personam judgment when he is not present within the territory of the forum, due process requires that the defendant have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 500 (Fla. 1989). "[T]he test is whether the defendant's conduct in connection with the forum state is 'such that he should reasonably anticipate being haled into court there.'" *Id.* at 500 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

## B. Failure to State a Claim

At the pleading stage, a complaint must contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). Although Rule 8(a) does not require "detailed factual allegations," it does require "more than labels and conclusions . . . a formulaic recitation of the cause of action will not do." *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555 (2007).  To survive a motion to dismiss, "factual allegations must be enough to raise a right to relief above the speculative level" and must be sufficient "to state a claim for relief that is plausible on its face."  *Id.* at 555.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering a Rule 12(b)(6) motion to dismiss, the court's review is generally "limited to the four corners of the complaint."  *Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009) (quoting *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)).  Courts must review the complaint in the light most favorable to the plaintiff, and it must generally accept the plaintiff's well-pleaded facts as true.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007).  However, pleadings that "are no more than conclusions are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Iqbal*, 556 U.S. at 679.

## IV.   DISCUSSION

### A.  Defendants' Motion to Take Judicial Notice (DE [5])

Defendants request this Court to take judicial notice of records from two parallel proceedings:  (1) the entire docket in the ABC Proceeding, *In Re: Assignment for the Benefit of Creditors of Schratter Foods Inc.*, No. 2018-013998-CA-01 (Cir. Ct. Miami-Dade Cty.); and (2) the entire docket in the Delaware District Court case, *ECB USA, Inc. et al. v. Savencia S.A., et al*, No. 19-cv-00731-RGA-CJB (D. Del.).  Defendants, in particular, ask this Court to notice dates surrounding the ABC Petition, including the Petition filing date of April 30, 2023, and that the Assignment was executed by Arno Leoni,

6

on behalf of SFI, on April 25, 2018.  Plaintiff agrees that this Court should take notice of the dates on the dockets, but objects to this Court taking judicial notice of anything else, including the facts in the filings themselves.  (Pl.'s Opp. (DE [19] at 10, n.9)).

The Court may take judicial notice of the records filed in this and other federal courts. *D'Amico v. Scola,* 2023 WL 2318233, at *1 (S.D. Fla. Jan. 11, 2023) (citing *United States v. Rey*, 811 F.2d 1453, 1457 n.5 (11th Cir. 1987) ("A court may take judicial notice of its own records and the records of inferior courts."); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (indicating that documents filed in another court may be judicially noticed); *Colburn v. Odom*, 911 F.3d 1110, 1112 n.6 (11th Cir. 2018)).  The Court may, therefore, take judicial notice of the records in the ABC Proceeding and pending Delaware litigation, including record dates as both parties agree.  But the Court cannot give weight to any facts that have not been identified and that were not litigated by Plaintiff in this case.

Defendants' Motion to Take Judicial Notice (DE [5]) is **GRANTED IN PART AND DENIED IN PART**.   To the extent Defendants request the Court to take judicial notice of the record dates in the ABC Proceeding, *In Re: Assignment for the Benefit of Creditors of Schratter Foods Inc.*, No. 2018-013998-CA-01 (Cir. Ct. Miami-Dade Cty.); and the Delaware District Court case, *ECB USA, Inc. et al. v. Savencia S.A., et al*, No. 19-cv-00731-RGA-CJB (D. Del.), the motion will be **GRANTED**.   To the extent Defendants request this Court take notice of any facts within either proceeding, the Motion is **DENIED**.

### B.  MOTION TO DISMISS (DE [6])

#### i.    Whether Plaintiff Pleads Facts Sufficient to Support a Claim for Relief

In their Motion to Dismiss, Defendants argue that Plaintiff fails to state a claim because its core allegations are based on "information and belief."  *See* (Defs.' Mot. (DE

[6] at 5)).  Defendants contend that Plaintiff's entire theory of the case relies on allegations made on information and belief.  This includes Plaintiff's contentions that Defendants "conspired to destroy any value remaining in SFI," and had "ulterior motives" in redirecting funds from SFI for their personal use.  *See id.* at 5–6 (quoting (DE [1-2] at ¶¶ 45, 89, 94, 128)).  Defendants argue these allegations are not entitled to any evidentiary weight.  *See id.* at 6.  Absent these allegations, Defendants maintain that the Complaint fails to state any claim for relief.  Plaintiff counters that it has more than satisfied 12(b)(6) pleading requirements and notes that allegations relying upon "information and belief" appear in only seven paragraphs within the Complaint.  Plaintiff, moreover, argues that it is entitled to bring allegations on "information and belief," particularly where such allegations speak to Defendants' culpability.  *See* (Pl.'s Opp. (DE [19] at 7)).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead factual allegations that raise a right to relief above a speculative level.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Twombly").  On a Motion to Dismiss, a court "may begin by identifying allegations that, because they are mere conclusions, are not entitled to the presumption of truth."  *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).

The Court agrees with Plaintiff.  The 176-page Complaint features detailed and highly-specific factual allegations regarding the sale of SFI, its post-closing ownership structure, the sale of SFI's assets, and its eventual placement into ABC Proceedings.  *See generally* (DE [1]).  Plaintiff's allegations based on "information and belief" are likewise adequate where the "belief is based on factual information that makes the inference of culpability plausible."  *Zhejiang Dushen Necktie Co. v. Blue Med, Inc.*, No. 16-24679-CIV, 2017 WL 4119604, at *6 (S.D. Fla. Sept. 18, 2017) (quoting *Associated*

*Indus. Ins. Co. v. Advanced Mgmt. Servs., Inc.*, No. 12-80393-CIV, 2013 WL 1149668, at *6 (S.D. Fla. Mar. 19, 2013)). Though Plaintiff relies on information and belief to bolster its substantive allegations, this comes as no surprise given the nature of its claims. Plaintiff is requesting an equitable accounting because it suspects foul play and is not able to prove as much at the motion to dismiss stage. This Court refuses to create a catch-22 situation in which it dismisses Plaintiff's complaint for a failure to obtain facts that could not be proven before discovery. *See Lan Li v. Walsh,* No. 16-81871-CIV, 2017 WL 3130392, at *7 (S.D. Fla. July 24, 2017) (finding that, in a claim for equitable accounting, the Court could not "determine the level of complexity of the account until a factual record [was] developed.").

As for Plaintiff's jurisdictional allegations, Plaintiff filed a supplemental opposition to Defendants' Motion to Dismiss after deposing Defendants Claude Blandin, Arno Leoni, Bruno Blandin, and Patrick Blandin. *See generally* (Pl.'s Supp. Opp. (DE [34])). In its supplemental briefing, Plaintiff posits additional, concrete facts pertaining to this Court's exercise of personal jurisdiction over the Defendants. *See id.* at 4 (noting, *inter alia*, that Claude Blandin "moved to Miami after obtaining an E-2 visa" and "acquired a residential property on South Beach" which he owned until its sale in September 2022."). Particularly at the Motion to Dismiss stage, and notwithstanding its reliance on "information and belief" allegations, Plaintiff has sufficiently pled its claims.

### i. Whether Plaintiff's Claims are Barred by the Statute of Limitations

Defendants also seek to dismiss Plaintiff's claims as untimely under Florida's statute of limitations. Defendants argue that Plaintiff's claims, which arise from Defendants alleged placement of SFI into ABC Proceedings, began tolling on the date

that SFI made its assignment to the Assignee on April 25, 2018.  Defendants correctly acknowledge that Florida's statute of limitations for tortious interference and equitable accounting claims is four years.  *See* Fla. Stat. § 95.11(3)(o) (tortious interference); Fla. Stat. § 95.11(k) and (p) (equitable accounting).  Defendants therefore conclude that Plaintiff's Complaint, filed on April 28, 2022, is untimely by three days and warrants dismissal.  Plaintiff responds that its Complaint is timely for two independent reasons. First, Plaintiff posits that the "last element" constituting the cause of action–the final Deferred Installment Payment–was not due until December 31, 2019.  *See* (Pl. Opp (DE [19] at 9) (citing Fla. Stat. § 95.03 (1) (2003)).  Plaintiff asks this Court to calculate the applicable statute of limitations from the last payment due date and argues that it could have filed an action as late as December 31, 2023.  Second, Plaintiff maintains that the action is still timely where the statute of limitations ran from the ABC Proceeding commencement date of April 30, 2018.  (Pl. Opp. (DE ([19] at 9)).  This, Plaintiff argues, is that date that the assignee "signed, noticed, and commenced the ABC proceeding." *See id.*

Plaintiff's Complaint is timely under Florida law.  The parties do not dispute that the relevant statute of limitations period is four years for the causes of action alleged in Plaintiff's complaint.  *See* (Defs.' Mot. (DE [6] at 8)); (Pl.'s Opp. (DE [19] at 8)).  The parties also agree that, under Florida law, "[a] cause of action accrues when the last element constituting the cause of action occurs."  (Defs.' Reply (DE [20] at 8)) (citing *Yoder v. Kuvin*, 785 So. 2d 679, 681 (Fla. 3d DCA 2001)); (Pl.'s Opp. (DE [19] at 8–9)).

The Court disagrees with Plaintiff that the relevant "last element" for purposes of this action is the final Deferred Installment Payment due date of December 31, 2019.

Plaintiff fails to explain why the final payment due date would constitute the "last element" in the cause of action, particularly when its claims center on Defendants' placement of SFI into ABC proceedings in April 2018.  Plaintiff's complaint, however, is still timely because this Court finds that the statute of limitations first ran on the assignment issue date of April 28, 2018.  Defendants' argument to the contrary – that this Court should consider only their execution date of April 25, 2018, unavailing.  Defendants' mere assignment, without a countersignature from the Assignee, carries no legal effect.  The ABC proceedings commenced on the issue date of April 30, 2018, and this date is therefore the date that the statute of limitations period began running.

This Court is wary of plaintiffs who wait until the final hour to file their complaint. Plaintiff, however, showed little indication of undue delay.  The District Court for the District of Delaware dismissed the individual Defendants on March 25, 2022, for lack of personal jurisdiction.  *See ECB USA, Inc., et al.*, No. 19-cv-00731-RGA-CJB at Dkt. 222. The earliest, therefore, that Plaintiff could have initiated this action was late March 2022. Plaintiff filed the action one month later, on April 28, 2022, and the Court therefore determines that Plaintiff's Complaint is timely.

### ii.  Whether Plaintiff has Standing to Bring Claims Arising from the December 6, 2014 SPA

Defendants urge this Court to dismiss all claims for Plaintiff's lack of standing under Rules 12(b)(1) and 12(b)(6).  Defendants argue that Plaintiff cannot assert its claims as successor-in-interest to ZNHC, the original seller of SFI under the parties' SPA, notwithstanding ZNHC's merger into Zausner in 2017.  *See* (Compl. (DE [1-2] at 5, n.1,

¶¶ 2, 73, 148, 154, 165)).[1]   Specifically, Defendants argue that Plaintiff has no basis to sue where (i) ECB USA and Atlantic Ventures were obligated to pay only ZHNC, not Zausner, under the SPA; and (ii) the SPA's anti-assignment clause specifically precludes Zausner from bringing claims on ZNHC's behalf.   *See* (Def. Mot. (DE [6] at 10)).   Although a 12(b)(1) challenge may be facial or factual, Defendants clarify that they are raising a facial challenge, "purely on the sufficiency of the allegations in the complaint," to Plaintiff's standing.   *See id.* (quoting *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 610 (D. Del. 2018)).   As a threshold matter, Plaintiff notes that Defendants' exact arguments were considered and rejected by the Delaware District Court.[2]   Plaintiff then posits three arguments in response.   First, Plaintiff contends that the SPA's anti-assignment clause provides that the Agreement is binding upon successors, including Zausner.   Second, Plaintiff argues that Zausner has standing to bring its claims under Delaware and Florida law.   Florida law, Plaintiff argues, is even more permissive where parties are free to assign the right to receive payments unless the anti-assignment provision expressly provides otherwise.   *See* (Pl. Opp. (DE [19] at 11)) (citing *Rapid Settlements, Ltd. V. Dickerson*, 941 So. 2d 1275, 1277 (Fla. Dist. Ct. App. 2006).   Third and finally, Plaintiff argues that Defendants waived the right to challenge standing through its conduct.   Plaintiff points in particular to a Delaware action in which ECB USA and AVC sued Zausner for breach of contract claim as "successor in interest" to ZNHC.   *See* (Pl. Opp. (DE [19] at 12)).

---

[1] Zausner is not a party to the SPA itself, although a representative from Plaintiff signed the SPA as a Guarantor.  Zausner appears as a party to Amendment No. 1 of the SPA, the modified Deferred Installment Payment plan.  *See id.* at ¶ 66; Ex. D, ¶ 8)).

[2] Plaintiff argues, as a threshold matter, that it is not asserting contract claims pursuant to the SPA.  *See* (Pl. Opp. (DE [19] at 10)).  Rather, Plaintiff asserts tort claims against Defendants for tortious interference and conspiracy.

"Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs., Inc.*, 572 F.3d 1271, 1279 (11th Cir. 2009).   Facial challenges to subject matter jurisdiction, as Defendants assert here, are "based solely on the allegations in the complaint." *Id.*   In considering Defendants' challenge, "the court must, as with a Rule 12(b)(6) motion, take the complaint's allegations as true." *Id.*

Both parties direct the Court to the SPA's anti-assignment provision.  Plaintiff cites to the below excerpt, while Defendant references only the italicized portion:

> This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, heirs, legal representatives and permitted assigns.   *Neither party may directly or indirectly assign any of its rights or delegate any of its obligations under this Agreement by operation of law or otherwise, without the prior written consent of the other party.   Any purported direct or indirect assignment in violation of this Section shall be null and void ab initio* . . .

SPA X § XII.4 (emphasis added).

The Delaware Court recognized Plaintiff's "full right to seek to enforce the SPA's provisions" – including for payment from ECB and Atlantic Ventures– where such provisions "inure[d] to Zausner's benefit" after it succeeded ZNHC.  *ECB USA, Inc., et al.*, No. 19-cv-00731-RGA-CJB, at *8 (cleaned up).  This Court agrees.  The SPA's anti-assignment provision clearly distinguishes between assignments by the parties' "successors" and "permitted assigns."   *See* SPA X § XII.4.  Successors, like Zausner, automatically assume rights and obligations in place of the succeeded party.  Whereas "permitted assigns" only do so if the parties agree upon the assignment in writing. Defendants argue that this Court should apply Delaware law because the merger occurred between two Delaware entities under Delaware law.  *See* (Defs.' Mot. (DE [6] at

10)).  Defendants then argue that, under Delaware law, a merger is an assignment "by operation of law" that is specifically prohibited by the SPA's anti-assignment clause.  In support, Defendants cite to a single case, *MTA Canada Royalty Corp. v. Compania Minera* Pangea S.A. de C.V., in which the Delaware Superior Court determined that an SPA's anti-assignment clause the phrase "assignment by operation of law" is "commonly understood to include a merger."  No. CV N19C-11-228 AML, 2020 WL 5554161, at *3 (Del. Super. Ct. Sept. 16, 2020).  Defendants' arguments are unpersuasive.  For one, Defendants do not address why Delaware law would apply in light of the SPA's Florida choice of law provision.  *See* ECF [1-2], SPA § XII.5.  Moreover, even if Delaware law were to apply, the anti-assignment clause in *MTA* is distinguishable.  The anti-assignment clause in this case begins with the following sentence:

> This Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective successors, heirs, legal representatives and permitted assigns.

SPA X § XII.4 (emphasis added).

While the anti-assignment clause in *MTA* included a similar provision, it appeared *after* the anti-assignment provision and was "subject to" the anti-assignment clause.  *See MTA Canada Royalty Corp.*, 2020 WL 5554161, at *2.  On the facts of this case, *MTA*'s reasoning is inapplicable.  The Court, therefore, agrees with the Delaware District Court and finds that Plaintiff has standing to assert its claims against Defendants.[3]

### iii.  Whether this Court has Personal Jurisdiction Over the Individual Defendants

---

[3] This Court need not address Plaintiff's third argument regarding Defendants' purported waiver of the anti-assignment clause, where it has already determined that Plaintiff has standing on other grounds.

Defendants, French citizens residing in Guadeloupe, next argue that Plaintiff fails to plead a *prima facie* basis for personal jurisdiction over them.  Defendants maintain that simply serving as an officer or director of a Florida corporation and taking actions in that capacity affords no basis for personal jurisdiction.  *See* (Defs.' Mot. (DE [6] at 12)).  The corporate shield doctrine, Defendants argue, also precludes Florida's long-arm statute from conferring jurisdiction over Defendants even where they may be personally liable.  *See id.*  Defendants then ask this Court to disregard any allegations by Plaintiff that Defendants acted in their personal interest where such allegations are based on "information and belief."  *See id.* at 12–13.  Defendants further argue that Plaintiff's intentional tort claims cannot assert personal jurisdiction over them where such claims are subject to dismissal.  *Id.* at 13.  Plaintiff counters that Florida's long-arm statute provides a clear basis for personal jurisdiction where Defendants have significant contacts in the forum.  Plaintiff also alleges personal jurisdiction based on Defendants' intentional torts committed in Florida.

Between Plaintiff's Complaint and its supplemental briefing, Plaintiff has sufficiently pled personal jurisdiction over Defendants.  Plaintiff has pled general and specific jurisdiction sufficient to satisfy Florida's long-arm statute.  "To establish a defendant is carrying on business under Section 48.193(1)(a)(1), the activities of the Defendants must be considered collectively and show a general course of business activity in the state for pecuniary benefit."  *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. 3d 1101, 1139 (S.D. Fla. 2019) (cleaned up).  Relevant factors include the "presence and operation of an office in Florida" and "the possession and maintenance of a license to do business in Florida."  *Id.*  Plaintiff alleges that Defendants, as directors of

ECB and AVC, decided to move SFI's offices to Miami, Florida after closing.  *See* (Compl. (DE [1] at ¶ 15)).  As demonstrated in Defendants' depositions and as set forth in Plaintiff's supplemental briefing, Defendants maintained substantial contacts with the state of Florida from August 2014 through June 2020.  In October 2014, Arno Leoni, a former Board member and Treasurer of SFI, met with the former President and CEO of SFI, Alain Voss, in Miami.  *See* (Pl. Supp. Br. (DE [34] at 5)).  After ECB and Atlantic Ventures closed on its purchase of SFI, Leoni moved his family to Miami in August 2015 and his children attended school for the following five years.  *See id.*  During this Court's hearing on Defendants' Motion, Defendants conceded that this Court has general jurisdiction over Leoni.  Claude Blandin, SFI's former president, also met with Voss in 2014 in Miami.  *Id.* at 4.  Blandin subsequently acquired an E-2 visa and purchased a residential property in South Beach, Miami.  *Id.*  As for Bruno Blandin and Patrick Blandin, Plaintiff alleges that Defendants visited Miami for corporate meetings and personal family visits intermittently throughout the relevant period.  *Id.* at 5–6.  While Defendants take issue with Plaintiff's allegations, they submitted no affidavits in rebuttal even though Defendants successfully defeated the Delaware Court's exercise of personal jurisdiction through affidavit evidence. Absent any rebuttal evidence, Plaintiff has sufficiently pled general jurisdiction under Fla. Stat. § 48.193(1)(a)(1).

To establish specific jurisdiction under Section § 48.193(1)(a)(2), "a plaintiff must allege factual matter showing the Defendants' acts caused injury within Florida—even if the Defendants committed the act outside the state."  *In re Takata Airbag Prod. Liab. Litig.*, 396 F. Supp. At 1140.  Plaintiff's Complaint includes several factual allegations detailing torts committed by Defendants within the state of Florida.  *See* (DE [1-2] at ¶¶

47–51; 163–69.  Defendants' argument – that Plaintiff cannot assert personal jurisdiction over them for actions taken as officers and directors of SFI – misses the mark.  As Defendants note, "[u]nder Florida law, in order to assert jurisdiction over a corporate officer for acts taken in his or her corporate capacity, a plaintiff must allege that the officer acted in a way other than for the furtherance of the business of his principal."  (Defs.' Mot. (DE [6] at 12)) (quoting *VIS Holdings Corp. v. Cooper*, No. 07-20882-CIV, 2007 WL 9702900, at *7 (S.D. Fla. Dec. 11, 2007)).  Plaintiff clearly and repeatedly alleges that Defendants acted in their own self-interest.  *See* (Compl. (DE [1-2] at ¶¶ 128–29; 167; 175–76)).  As discussed *supra* in Section II.b., Plaintiff's allegations satisfy pleading requirements even where they are pled on "information and belief."  Finally, Defendants raise no due process concerns and none exist here in light of Defendants' meaningful operations and contacts in the state of Florida.  *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1220 (11th Cir. 1999).  Defendants' final argument, that Plaintiff's underlying tort claim fails and cannot serve as a basis for jurisdiction, likewise fails for the reasons discussed below.

### C.  Whether Plaintiff Failed to State a Claim under Rule 12(b)(6)

Defendants ask this Court to strike Plaintiff's substantive allegations for (i) equitable accounting; (ii) tortious interference; and (iii) conspiracy to tortiously interfere for failure to state a claim.

#### i.  Equitable Accounting

Defendants contend that Plaintiff's equitable accounting claim fails for four reasons:  (1) Plaintiff is not a party to transaction between SFI and Atalanta; (2) Plaintiff alleges no fiduciary relationship with Defendants or any party to the SFI asset sale transaction; (3) the transaction in the SPA; namely, the non-payment of $6.1M in deferred

payments, is "not complex;" and (4) Plaintiff has an adequate remedy at law through damages. *See* (Defs.' Mot. (DE [6] at 13–14)).

Under Florida law, to establish a claim for equitable accounting, a plaintiff "must show the existence of a fiduciary relationship or complex transaction and must demonstrate it has no adequate remedy at law." *Validsa, Inc. v. PDVSA Services, Inc.*, 632 F. Supp. 2d 1219, 1244 (S.D. Fla. 2009), *rev'd on other grounds* (citing *Kee v. Nat'l Reserve Life Ins. Co.*, 918 F.2d 1538, 1540 (11th Cir.1990)). The Delaware District Court, applying Florida law, rejected Defendants' arguments, and Defendants fare no differently here. Defendants' first argument, that Plaintiff is a stranger to the SFI asset sale transaction, fails here where the case cited by Defendants, *Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, does not require direct privity between parties to a transaction for a claim of equitable accounting. *See* 694 F. Supp. 1275, 1280 (S.D. Fla. 2010). Defendants' second argument fails as Plaintiff need not plead a fiduciary relationship where, as here, Plaintiff pleads that a complex transaction is at issue. This Court agrees with the District Court in Delaware that the transaction is plausibly complex because:

> (1) the transaction at issue has generated three separate lawsuits in two federal courts; (2) it involves a "multi-tiered structure for securing payment" for SFI's sale; and (3) implicates a number of different contractual agreements and many different parties/related corporations/relevant actors.

*ECB USA, Inc., et al.*, No. 19-cv-00731-RGA-CJB, at 29 (citing *Lan Li v. Walsh*, CASE NO. 16-81871-CIV-MARRA, 2017 WL 3130392, at *7 (S.D. Fla. July 24, 2017)).

Defendants' final argument fails in light of Plaintiff's argument that it otherwise lacks an adequate remedy at law. Plaintiff posits that it likely cannot recover the $6.1M in deferred payment in light of the "disappearance" of the Atalanta deal proceeds and the

cash-pooling Treasury Agreement among Defendants' affiliate organizations, including non-party C2B. At least at the Motion to Dismiss stage, Plaintiff has sufficiently pled its equitable accounting claim.

ii. Tortious Interference

Defendants urge dismissal of Plaintiff's tortious interference claim where (1) Plaintiff has no contractual rights to be interfered with; (2) Defendants are not strangers to the transaction; and (3) the alleged tortious acts do not interfere with contractual rights.

To plead tortious interference under Florida law, a plaintiff must show: (1) the existence of a contractual relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by defendant; and (4) plaintiff's damages resulting from the breach. *Duty Free Ams., Inc. v. Estee Lauder Cos*., 797 F.3d 1248, 1279 (11th Cir. 2015). Notwithstanding Defendants' objections, Plaintiff has adequately pled its tortious interference claim. As to the contractual relationship, Plaintiff alleges that Zausner was a party to Amendment No. 1, which modified the Deferred Payment installments and payment schedule. Under Defendants' second argument, Plaintiff cannot plausibly allege tortious interference where Defendants acted in the best interests of the corporation. As discussed in Section II.b., Plaintiff has repeatedly and adequately pled that Defendants acted in their own personal interest. Defendants' third argument – that Plaintiff asserts no interference with contractual rights – is also of no moment. Plaintiff alleges that Defendants breached the SPA and Amendment No. 1 by directing proceeds from the SFI asset sale to themselves. *See* (Pl. Opp. (DE [19] at 19)). Plaintiff also alleges that Defendants' placement of SFI into ABC Proceedings breached the Stock Pledge Agreement signed by Zausner. (Compl. (DE [1-2] at ¶¶ 133–34, 167)). Although Defendants argue that SFI's asset sale

did not violate the SPA or Stock Pledge agreement, this Court finds that Plaintiff need not definitively prove which covenants were violated at this stage in the proceedings.  Rather, Plaintiff need only demonstrate facts sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Plaintiff has done so here and, accordingly, has sufficiently pled its tortious interference claim.

### iii.  Conspiracy

Defendants' arguments against Plaintiff's tortious interference conspiracy claim are similarly unpersuasive.  Defendants first argue that Plaintiff's conspiracy claim cannot proceed where the substantive tortious interference claim is meritless.  This argument, as discussed above, is inapplicable where Plaintiff has sufficiently pled its tortious interference claim.  Second, Defendants contend that Plaintiff's conspiracy claim is barred by the intra-corporate conspiracy doctrine, which forecloses an "actionable conspiracy between an entity and its officers or agents."  *See* (Defs.' Mot. (DE [6] at 16)) (quoting *Hoon v. Pate Const. Co.*, 607 So. 2d 423, 430 (Fla. 4th DCA 1992)).

An actionable conspiracy claim under Florida law requires: "(a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy."  *United Techs. Corp v. Mazer*, 556 F.3d 1260, 1271 (11th Cir. 2009) (applying Florida law).  "Where corporate agents are acting within the scope of their employment, their actions 'are attributed to the corporation itself, thereby negating the multiplicity of actors needed for a conspiracy.'"  *Weisman v. S. Wine & Spirits of Am., Inc.*, 297 So. 3d 646, 652 (Fla. 4th DCA 2020) (quoting *HRCC, Ltd. v. Hard Rock Cafe Int'l (USA), Inc.*, 302 F. Supp. 3d 1319, 1324–25 (M.D. Fla. 2016), aff'd, 703 Fed. Appx.' 814 (11th Cir. 2017)).

Defendants' arguments again miss the mark.  Plaintiff alleges throughout its Complaint that Defendants – as directors and officers of SFI – continuously placed their personal interests ahead of SFI's interests and contractual obligations.  See (Compl. (DE [1-2] at ¶¶ 128–29; 167; 175–76)).  Defendants' arguments do little to rebut, or even acknowledge, Plaintiff's allegations.  This Court, therefore, finds that Plaintiff's conspiracy claim is adequately pled and survives Defendants' Motion to Dismiss.

## V.      <u>Defendants' Motion to Strike (DE [6])</u>

Defendants ask this Court to strike Plaintiff's allegations relating to SFI's asset sale and business affairs.  In support, Defendants argue that Plaintiff's fraudulent conveyance theory "does not make sense" where Plaintiff's suggested recourse—paying Plaintiff instead of its creditors in the ABC proceeding—would constitute an actual fraudulent conveyance.  *See* (Defs.' Mot. (DE [6] at 17)).  Plaintiff responds that Defendants provide no legal basis to strike its allegations and maintain that no prejudice concerns exist here. This Court agrees with Plaintiff.

Pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, a party may move to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike, however, are generally disfavored by the court.  *See Williams v. Jader Fuel Co.*, 944 F.2d 1388, 1400 (7th Cir. 1991).  Striking allegations from a pleading, however, "is a drastic remedy to be resorted to only when required for the purposes of justice" and only when the stricken allegations have "no possible relation to the controversy."  *Augustus v. Bd. of Pub. Instruction*, 306 F.2d 862, 868 (5th Cir. 1962).  In reviewing a motion to strike, the circumstances must be considered in the light most favorable to the non-moving party, and such a motion "will usually be denied unless the allegations have no possible relation

to the controversy and may cause prejudice to one of the parties." *Poston v. Am. Pres. Lines, Ltd.*, 452 F. Supp. 568, 570 (S.D. Fla. 1978) (citing *Augustus*, 306 F.2d at 868).

Plaintiff's allegations, as discussed throughout this opinion, are plausible and sufficient to withstand Defendants' Motion to Dismiss (DE [6]).  The allegations relating to SFI's asset sale are neither irrelevant nor immaterial and raise no prejudice concerns (and Defendants have not argued that they do).  Defendants' Motion to Strike (DE [6]) is therefore **DENIED**.  Accordingly, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, and for Failure to State a Claim and Motion to Strike (DE [6]), is **DENIED**.

**IT IS FURTHER ORDERED AND ADJUDGED** that Defendants' Motion to Take Judicial Notice (DE [5]) is **GRANTED IN PART AND DENIED IN PART**.  To the extent Defendants request the Court to take judicial notice of the record dates in the ABC Proceeding, *In Re: Assignment for the Benefit of Creditors of Schratter Foods Inc.*, No. 2018-013998-CA-01 (Cir. Ct. Miami-Dade Cty.); and the Delaware District Court case, *ECB USA, Inc. et al. v. Savencia S.A., et al*, No. 19-cv-00731-RGA-CJB (D. Del.), the motion will be **GRANTED**.  To the extent Defendants request this Court take notice of any facts within either proceeding, the Motion is **DENIED**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida, this 16th day of August 2023.

RAAG SINGHAL
UNITED STATES DISTRICT JUDGE

Copies furnished to counsel of record via CM/ECF